UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONNIE KAUFMAN, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> INTERNATIONAL LONG SHORE AND WAREHOUSE UNION, et al., <br><br> Defendants. | Case No.16-cv-03386-JST <br><br> **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT ILWU'S MOTION FOR SANCTIONS** <br><br> Re: ECF Nos. 29, 34, 36 |

Before the Court are Defendants' motion for summary judgment and accompanying request for judicial notice, and Defendant ILWU's motion for sanctions. ECF No. 29, 34, 36. The Court will grant the request for judicial notice, the motion for summary judgment, and the motion for sanctions.

## I. REQUEST FOR JUDICIAL NOTICE

Defendants filed a request for judicial notice in support of their motion for summary judgment. ECF No. 34. Specifically, Defendants ask the Court to take judicial notice of various court filings in a related case Plaintiffs filed in 2014. Id. These are all public documents properly subject to judicial notice under Federal Rule of Evidence 201. See, e.g., United States v. Black, 482 F.3d 1035, 1041 (9th Cir. 2007). The Court therefore grants the request.

## II. INTRODUCTION

Plaintiffs Ronnie Kaufman and Alphonce Jackson are marine clerks and members of Defendant International Long Shore and Warehouse Union ("ILWU"), Local 34. ECF No. 32 ¶ 4. Workers in that bargaining unit are employed by the Pacific Maritime Association ("PMA") and its member companies in ports along the West Coast. ECF No. 33 ¶ 3. ILWU serves as the exclusive bargaining representative for marine clerks and longshore workers working for PMA

members. Id. The collective bargaining agreement ("CBA") negotiated between ILWU and its locals and PMA, on behalf of its member companies, includes the Pacific Coast Clerk's Contract Document ("PCCCD"), which governs the terms and conditions of employment for marine clerks employed by PMA member companies. ECF No. 31 ¶ 5.

In 2014, Plaintiffs filed a lawsuit against the ILWU International and Local 34, for violations of section 501 of the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA") and section 301 of the Labor-Management Relations Act ("LMRA"). ECF No. 34-1 ("Case 1"). On September 29, 2015, the Court granted summary judgment in favor of Defendants ILWU and Local 34. The Court summarized Plaintiffs' claims as follows:

> Plaintiffs allege that Defendants breached the duty of fair representation by conspiring to form and promote a rival union consisting of office clerical workers and by failing to preserve seniority rights and vesting rights in allowing unregistered workers obtain clerk planner jobs before registered marine clerks. They also allege that Defendants breached their fiduciary duty by using membership dues in a manner that did not solely benefit Local 34 and its members. Jackson also claims that the ILWU breached its duty of fair representation when it changed its pension policies and denied him the ability to concurrently work and collect his pension. Plaintiffs request that the Court issue an injunction giving registered marine clerks access to planner jobs on a seniority basis.

ECF No. 34-3 at 2-3.

In its order granting summary judgment, the Court rejected each of Plaintiffs' claims on multiple grounds. First, the Court granted judgment on the LMRDA claim, finding 1) that Plaintiffs had failed to satisfy the necessary procedural prerequisites, and 2) that section 501 provides a right of action against the officers and employees of a labor organization, but not against the labor organization itself. Id. at 6-7. Second, the Court granted judgment for the defendants on Plaintiffs' LMRA claim. The Court explained 1) that Plaintiffs did not meet the exhaustion requirements to bring a section 301 claim, 2) that the claim failed on the merits,[1] and 3) that the claim was time-barred. Id. at 9-10. Finally, the Court construed the Complaint as also

---

[1] Although "Plaintiffs allege[d] that Defendants violated the PCCCD by allowing unregistered office clerical workers access to jobs that should have been performed by registered marine clerks," the Court concluded that "the dispatch priority and seniority rights outlined in the PCCCD apply to marine clerks, not to workers outside of the bargaining unit." Id. "Office clerical workers are outside the bargaining unit and are not bound by the PCCCD."

2

alleging a free-standing claim for breach of the duty of fair representation, and granted judgment in favor of the defendants. The Court determined that the claim was time barred, and that it failed on the merits because the "decision to add new bargaining units or safeguard certain jobs" was not discriminatory or made in bad faith. Id. at 11-13. On October 5, 2015, the Court entered "JUDGMENT of dismissal with prejudice [] on all claims," and dismissed the case "on the merits." ECF No. 34-2.

On June 17, 2016, Plaintiffs filed this action. ECF No. 1 ("Case 2"). Unlike in Case 1, in the instant action Plaintiffs sued ILWU and PMA, rather than ILWU and Local 34. In almost all other respects, however, Case 2 is identical to Case 1. Indeed, Plaintiffs copied the facts section from their Case 1 Complaint, and pasted it into the argument section of their Case 2 Complaint. Compare ECF No. 1 with ECF No. 34-1. In both cases, Plaintiffs argue that Defendants engaged in unlawful "dual unionism" and allowed unregistered office clerical workers access to jobs that should have been performed by registered marine clerks. If anything, Case 2 is more limited than Case 1. It appears to allege only a violation of section 301 of the LMRA, dropping any claim under section 501 of the LMRDA. ECF No. 1. It also eliminates any allegations about improper changes to Plaintiffs' pension plan. Id. The only new allegations relate to Plaintiffs' attempts, after the dismissal of Case 1, to obtain relief through ILWU's internal grievance process.[2] The "Demand for Relief" in Case 2 is also nearly identical to Case 1

> Case 1: Plaintiffs want the Court to issue a temporary injunction that allows ILWU Local 34 registered clerks who are chartered and vested members of the International Longshore and Warehouse Union access to our jurisdictional rights to do planners jobs this work is currently being done exclusively by Marine Clerks Association ILWU Local 34 clerical unit O.C.U. Plaintiffs want these jobs to be dispatched based on industry seniority.

> Case 2: Plaintiff's petition the court as chartered and vested members of the International Longshore and Warehouse Union for access to our jurisdictional right's to be promoted by industry seniority to planner job's [sic]. This work is currently being done by employer Pacific Maritime Association (PMA) member companies using outside bargaining unit personnel in violation of section #1

---

[2] Plaintiffs filed their grievance with Local 34 on December 21, 2015. ECF No. 30-1 at 45. Local 34 denied the grievance on January 7, 2016, and gave Plaintiffs 30 days to appeal. Id. at 48. Plaintiffs appealed on February 3, 2016, and Local 34 denied the appeal on March 3, 2016. Id, at 54-56.

3

jurisdiction of the Pacific Coast Longshore Agreement contract document July 1, 2014, July 1, 2019, ILWU-PMA. This jurisdictional breach constitutes a breach of contract employer Pacific Maritime Association (PMA).

Compare ECF No. 1 with ECF No. 34-1.

In addition to the similarity in allegations in the two complaints, Plaintiffs admitted in their depositions that Case 2 involves the same facts and claims as Case 1. Plaintiff Jackson responded "Yes" when asked "[i]s it fair to say that you're asserting the same claims in this lawsuit that you asserted in your prior lawsuit against the union?" ECF No. 30-2 at 19. Plaintiff Kaufman was less direct, but confirmed that Case 2, like Case 1, includes claims that clerical workers should not be able to perform marine clerks' jobs. ECF No. 30-1 at 8.

On June 9, 2017, Defendants filed a joint motion for summary judgment. ECF No. 29. They also filed a motion for sanctions against Plaintiffs on June 14, 2017. ECF No. 36. The Court heard oral argument on August 3, 2017.

### III.    MOTION FOR SUMMARY JUDGMENT

Defendants argue that Plaintiffs' claims against ILWU are barred by res judicata, and that Plaintiffs' claims against PMA are barred by collateral estoppel.

#### A.    Res Judicata: ILWU

Under the doctrine of res judicata, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." Headwaters Inc. v. U.S. Forest Serv., 399 F.3d 1047, 1051–52 (9th Cir. 2005) (quoting In re Schimmels, 127 F.3d 875, 881 (9th Cir. 1997)). The elements necessary to establish res judicata are: "(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 322 F.3d 1064, 1077 (9th Cir. 2003). In analyzing the "same claims" element, courts consider: "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. The last of these criteria is the most important." Headwaters Inc, 399 F.3d at 1051–52 (quoting Costantini v. Trans World Airlines, 681 F.2d 1199, 1201–02 (9th Cir. 1982)). All three elements

4

are satisfied here as to ILWU.

First, based on the sub-factors listed above, Case 1 and Case 2 involve the same claims. Most importantly, the two cases involve the same nucleus of facts. In each case, Plaintiffs alleged that ILWU violated the law by representing clerical workers and negotiating for them to perform work that Plaintiffs claim should have gone to marine clerks. This near complete overlap in facts is clear from the text of the two Complaints, compare ECF No. 1 with ECF No. 34-1, and from Plaintiffs' deposition testimony. E.g., ECF No. 30-2 at 19 (Plaintiff Jackson agreed in his deposition that he was "asserting the same claims in this lawsuit that [he] asserted in [his] prior lawsuit against the union").[3] Further, at the hearing on this motion, Plaintiff Jackson admitted that he "keep[s] coming back with the same issue," despite the Court's prior adverse ruling. Although Plaintiff Kaufman told the Court that Case 2 differs from Case 1, when he described the merits of his claims, it was clear that they are nearly identical to those raised in Case 1.

The other factors also demonstrate that there is "an identity of claims." ILWU's "freedom from liability" over events that were already the subject of an earlier lawsuit would be impaired if the union were forced to litigate the same issues again. See Costantini, 681 F.2d at 1202. The same evidence is presented in both cases: the ILWU International's Constitution, the PCCCD, the July 1, 2014 Memorandum of Understanding between the ILWU International and PMA, and testimony from Plaintiffs and any union witnesses. Finally, both suits concern the infringement of Plaintiffs' alleged right to jobs currently being performed by clerical workers. In sum, it is clear that there is an "identity of claims" between Case 1 and Case 2. The first res judicata element is satisfied.

---

[3] The Court's conclusion is not changed by the fact that Plaintiffs allege some additional facts regarding an internal grievance they filed with Local 34. The "same transactional nucleus of facts" does not mean "identical facts." E.g., Valentine v. Inside Out Mktg., Inc., No. CV1404775DMGSHX, 2015 WL 13285084, at *5 (C.D. Cal. Feb. 5, 2015) (finding an identity of claims despite some new factual allegations in the second case).

In any case, Plaintiffs appear to have alleged these new facts in order to show that they "have been prevented from exhausting contractual remedies by the union's wrongful refusal to process the grievance." ECF No. 1 at 2. Failure to exhaust was one basis for the Court's order granting judgment in favor of Defendants in Case 1 on Plaintiffs' section 301 LMRA claim. ECF No. 34-3 at 9-10. Even assuming Plaintiffs have now exhausted this claim through their grievance, however, the Court also concluded that that the claim failed on the merits and was time-barred. Accordingly, for this reason also, Plaintiffs' new grievance-related allegations do not change the Court's res judicata analysis.

5

Second, Case 1 resulted in a "final judgment on the merits." Tahoe–Sierra Pres. Council, Inc., 322 F.3d at 1077. On October 5, 2015, after issuing its order granting summary judgment in favor of the defendants, the Court entered "JUDGMENT of dismissal with prejudice [] on all claims," and dismissed the case "on the merits." ECF No. 34-2.

Third, ILWU and Plaintiffs were parties in both cases. The fact that Plaintiffs replaced Local 34 with PMA in Case 2 does not destroy res judicata as to ILWU. See U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 249 (9th Cir. 1992) ("Moreover, the naming of additional parties does not eliminate the res judicata effect of a prior judgment 'so long as the judgment was rendered on the merits, the cause of action was the same and the party against whom the doctrine is asserted was a party to the former litigation.'") (quoting Dreyfus v. First Nat'l Bank of Chicago, 424 F.2d 1171, 1175 (7th Cir. 1970).

Because all three elements are satisfied, the Court concludes that the doctrine of res judicata bars Plaintiffs' claims as to Defendant ILWU.

### B. Collateral Estoppel: PMA

"Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979). Defensive collateral estoppel, also known as issue preclusion, "prevents a party from relitigating an issue decided in a previous action if four requirements are met: '(1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result of a final judgment in that action; and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action.'" Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1050 (9th Cir. 2008) (quoting United States Internal Revenue Serv. v. Palmer, 207 F.3d 566, 568 (9th Cir. 2000)). The party asserting issue preclusion has the burden to show that each element has been met. Id. at 1050-51. Defendant PMA has satisfied its burden here.

The Ninth Circuit has identified several factors to consider in determining whether the there was a full and fair opportunity to litigate the issue in the previous action: "whether there is a 'substantial overlap' between the argument to be advanced in the second proceeding as was

advanced in the first; whether the argument involves the same rule of law as in the prior proceeding; whether pretrial preparation and discovery in the first action embraced the matter presented in the second; and whether the claims involved in the two proceedings are closely related." Velazquez v. Costco Wholesale Corp., No. SACV11508JVSRNBX, 2011 WL 13152476, at *2 (C.D. Cal. July 14, 2011). Those factors are all met. There is more than a "substantial overlap" between the arguments in Case 1 and Case 2; the arguments are essentially the same. Plaintiffs argued in each Complaint that Defendants unlawfully represented clerical workers and negotiated for them to perform work that should have gone to marine clerks. As discussed above with respect to ILWU, the same laws and claims are at issue in both cases.

Second, all the issues in this action were "actually litigated" in Case 1. In their Case 2 Complaint, Plaintiffs appear to assert only a section 501 claim under the LMRDA, and potentially a breach of fiduciary duty claim. ECF No. 1. Each of these claims was resolved unfavorably to Plaintiffs at summary judgment in Case 1. ECF No. 34-3. Moreover, the fact that the parties engaged in discovery for a year before fully briefing the defendants' motion for summary judgment demonstrates that the Court reached its decision in an adversarial context. ECF No. 29 at 22. Finally, Plaintiffs, the people "against whom collateral estoppel is asserted in the present action," were parties in the previous action. Kendall, 518 F.3d at 1050.

Because all three elements of issue preclusion are satisfied, the Court grants summary judgment in favor of Defendant PMA on all claims.

### IV. MOTION FOR SANCTIONS

In its sanctions motion, ILWU seeks an order striking the complaint and awarding ILWU its fees and costs. ECF No. 36 at 3. Because the Court already granted Defendants' motion for summary judgment as to all claims, the request to strike the Complaint is denied as moot. The Court therefore considers only whether monetary sanctions are appropriate.

Defendant seeks sanctions alternatively under Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, or the Court's inherent authority. However, because "§ 1927 authorizes sanctions for the multiplication of proceedings, it 'cannot be applied to an initial pleading.'" Pascual v. Wells Fargo Bank, N.A., No. 4:13-CV-02005-KAW, 2014 WL 582264, at *7 (N.D. Cal. Feb. 13,

2014) (quoting In re Keegan Mgmt. Co., 78 F.3d 431, 435 (9th Cir. 1996)). Therefore, the Court considers sanctions only under Rule 11 and its inherent powers.

Rule 11 "provides for the imposition of sanctions when a filing is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." Estate of Blue v. Cty. of Los Angeles, 120 F.3d 982, 985 (9th Cir. 1997). "'Frivolous filings' are those that are 'both baseless and made without a reasonable and competent inquiry.'" Buster v. Greisen, 104 F.3d 1186, 1190 (9th Cir. 1997) (quoting Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc)). "The test for whether Rule 11 is violated does not require a finding of subjective bad faith by the attorney or unrepresented party." McMahon v. Pier 39 Ltd. P'ship, No. C03-00251 CRB, 2003 WL 22939233, at *6 (N.D. Cal. Dec. 5, 2003).

In addition to Rule 11, courts also have the "inherent power to levy sanctions, including attorneys' fees, for 'willful disobedience of a court order . . . or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Fink v. Gomez, 239 F.2d 989, 991 (9th Cir. 2001) (quoting Roadway Express, Inc. v. Piper, 447 U.S. 752, 766 (1980)). Under the court's inherent power, however, sanctions are only available "if the court specifically finds bad faith or conduct tantamount to bad faith." Id. at 994. Conduct that is tantamount to bad faith includes "recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." Id.

The Court concludes that sanctions are appropriate under Rule 11. It is well-settled in the Ninth Circuit that the filing of "successive complaints based upon propositions of law previously rejected may constitute harassment under Rule 11." Buster v. Greisen, 104 F.3d 1186, 1190 (9th Cir. 1997), as amended on denial of reh'g (Mar. 26, 1997) (quoting Zaldivar v. City of Los Angeles, 780 F.2d 823, 833 (9th Cir.1986); Estate of Blue v. Cty. of Los Angeles, 120 F.3d 982, 985 (9th Cir. 1997) ("When a reasonable investigation would reveal that a claim is barred by res judicata or collateral estoppel, for example, Rule 11 sanctions may be imposed within the district court's discretion."). This is true even when a plaintiff is proceeding pro se. E.g., Valtierra v. World Sav. Bank, No. 1:12-CV-1227 AWI BAM, 2012 WL 5396689, at *3 (E.D. Cal. Nov. 2, 2012) (awarding sanctions against a pro se plaintiff who filed a fourth lawsuit against the same

8

defendant challenging the same conduct).

Here, as explained above, Case 2 is nearly identical to Case 1, which the Court dismissed with prejudice as to all claims in September 2015. Plaintiffs admitted as much both in their depositions and at the hearing on this motion. E.g., ECF No. 30-2 at 19 (Plaintiff Jackson agreed that he was "asserting the same claims in this lawsuit that [he] asserted in [his] prior lawsuit against the union"). Moreover, these are not the only two cases Plaintiffs have filed against ILWU. ECF No. 36 at 6-7 (listing the seven cases Plaintiffs have filed against ILWU, Local 34, or PMA under the same legal theories). "[A]t bottom, plaintiff[s] ha[ve] been merely restating the same underlying claims in several subsequent lawsuits." McMahon v. Pier 39 Ltd. P'ship, No. C03-00251 CRB, 2003 WL 22939233, at *6 (N.D. Cal. Dec. 5, 2003). This conduct "harass[es] the defendants" in violation of Rule 11. The fact that Plaintiffs are pro se does not change the Court's conclusion, particularly given the volume of cases Plaintiffs have filed under the same theory. Id. ("While Rule 11 should perhaps be applied more cautiously where, as here, plaintiff represents himself, the Court is satisfied that the violations in this case warrant the sanction imposed."); see also Valtierra, 2012 WL 5396689, at *3 ("[Even] considering Plaintiffs' pro se status, the Court concludes that Plaintiffs filed this lawsuit without reasonable investigation and that it was filed in an effort to harass Defendants.").

ILWU complied with the procedural requirements of Rule 11. As another court in this district explained:

> Rule 11 provides for a mandatory 21 day safe-harbor period before a motion for sanctions is filed with the court. The movant serves the allegedly offending party with a filing-ready motion as notice that it plans to seek sanctions. After 21 days, if the offending party has not withdrawn the filing, the movant may file the Rule 11 motion with the court. This period is meant to give litigants an opportunity to remedy any alleged misconduct before sanctions are imposed.

Portnoy v. Veolia Transp. Servs., Inc., No. 2:13-CV-00043-MCE-EF, 2014 WL 3689366, at *4 (E.D. Cal. July 24, 2014). Counsel for ILWU sent Plaintiffs a letter on April 11, 2017, explaining that the Union would be filing a motion for sanctions to recover its attorneys' fees based on Plaintiffs' filing a frivolous complaint based on previously-dismissed claims. ECF No. 37-3. On April 19, 2017, defense counsel spoke with Plaintiffs by phone, and confirmed their receipt of the April 11 letter. ECF No. 37 ¶ 5. Counsel explained that "ILWU intended to seek sanctions

against them for re-filing the same case and asked them if they would be willing to dismiss the case." Id. Plaintiffs refused. Plaintiffs also denied ILWU's request to extend the deadline for filing dispositive motions under after the sanctions motion was decided, to avoid the potentially unnecessary accumulation of additional attorneys' fees. Id. ¶ 6. In other words, counsel for ILWU made every attempt to avoid this sanctions motion and to discourage Plaintiffs' continued prosecution of this case. See Portnoy, 2014 WL 3689366, at *4 (awarding sanctions after "Defendant warned Plaintiff [that] filing a complaint that includes factual or legal contentions that are barred by a prior judgment may give rise to sanctions under Rule 11").

The Court does not make the decision to impose monetary sanctions on these pro se Plaintiffs lightly. After explaining the basis for ILWU's sanctions motion to Plaintiffs at the hearing, however, and listening to their response, and considering the Plaintiffs' litigation history, the Court has no confidence that, absent sanctions, Plaintiffs will not respond to the dismissal of this case by filing yet another one. Indeed, Plaintiffs devoted the majority of their time at oral argument to repeating the merits argument that ILWU violated the law by representing clerical workers and negotiating for them to perform work that should have gone to marine clerks. Neither Plaintiffs' oral argument nor their briefing engaged with the substance of Defendants' collateral estoppel, res judicata, or sanctions arguments. At this point, the Court is forced to conclude that an award of monetary sanctions is the only thing that will prevent Plaintiffs from "coming back with the same issue" and forcing ILWU to again litigate claims it has already won.

///
///
///
///
///
///
///
///
///

## CONCLUSION

The Court grants Defendants' motion for summary judgment and grants the motion for sanctions. Plaintiffs are ordered to pay the attorneys' fees and costs incurred by ILWU in defending against Plaintiffs' claims.

According to the declaration of Eleanor Morton, Plaintiffs' fees total $22,437.50 and their costs total $2,374.14. Although "[t]he ability of a party to pay is one factor a court should consider when imposing sanctions . . . the sanctioned party has the burden to produce evidence of inability to pay." In re Yagman, 796 F.2d 1165, 1185 (9th Cir.), amended, 803 F.2d 1085 (9th Cir.1986). Plaintiffs provided no such evidence. Moreover, given the nature and scope of the litigation, the requested amount is reasonable on its face. Accordingly, the Court awards the full amount requested by Defendants.

IT IS SO ORDERED.

Dated: August 4, 2017

_____
JON S. TIGAR
United States District Judge